IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| ROBERT S. PATRICK and | : | BANKRUPTCY NO.: 5:04-bk-51796-JJT |
| EILEEN PATRICK, | : | |
| | : | |
| DEBTORS | : | |
| | : | |
| EILEEN PATRICK, on behalf of herself | : | {**Nature of Proceeding**: Plaintiffs' |
| and all others similarly situated, KURT | : | Supplemental/Amended Motion for |
| UNDERKOFLER, on behalf of herself | : | Class Certification (Doc. #132)} |
| and all others similarly situated and | : | |
| SUSAN A. HELSEL, on behalf of herself | : | |
| and all others similarly situated, | : | |
| | : | |
| PLAINTIFFS | : | |
| | : | |
| vs. | : | |
| | : | |
| DELL FINANCIAL SERVICES, L.P., | : | |
| DELL, INC., trading or doing business as, | : | |
| and/or, formerly known as, DELL | : | |
| COMPUTER CORPORATION, CIT | : | |
| GROUP, INC., NEWCOURT CREDIT | : | |
| GROUP, INC. now by merger, acquisition | : | |
| or purchase CIT GROUP, INC., and | : | |
| TYCO INTERNATIONAL, LTD/BER, | : | |
| also known as, TYCO INTERNATIONAL, | : | |
| LTD., also known as TYCO | : | |
| INTERNATIONAL (US), INC., | : | |
| | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 5:05-ap-50085-JJT** |

# **OPINION**

Pending before me is Plaintiffs' Motion for Class Certification.

Since I write for the parties, I need not reference the facts except as necessary to dispose of the issues before me. Suffice it to say that the requirements of class certification are spelled out in Federal Rule of Civil Procedure 23, incorporated into the bankruptcy rules by Federal

Rule of Bankruptcy Procedure 7023. All four requisites of Rule 23(a) must be met, *and* at least one of the types of class actions set forth in Rule 23(b) must apply. For reasons I discuss further, I conclude that this Motion must be denied because one of the four prerequisites of Rule 23(a) – commonality – has not been satisfied, and even if it were, none of the types of actions listed in Rule 23(b) can be maintained.

I initiate my discussion by articulating the surviving Counts of Plaintiff's Complaint. Count I is an objection to the secured claim of Dell Financial Services (DFS) and/or a request to reconsider that claim, both under 11 U.S.C. § 502. Count II is a request to determine the secured status of that claim under § 506. Count V requests a declaratory judgment and injunctive relief. Counts III and IV have been dismissed and are no longer viable. Based on the earlier rulings of this Court (*Patrick v. Dell Financial Services, L.P. (In re Patrick)*, 344 B.R. 56 (Bankr. M.D.Pa. 2005)), and the District Court sitting as an appellate court (*Patrick v. Dell Financial Services*, 366 B.R. 378 (M.D. Pa. 2007 and *Patrick v. Dell,* No. 3:CV-06-0978, *Dell v. Patrick,* No. 3:CV-06-1061 (M.D. Pa. March 19, 2008), it does not appear that Plaintiffs can now pursue monetary damages.

The underlying premise of Plaintiffs' Complaint is that a debtor in Chapter 13, like the Plaintiffs here, has a right to a determination whether a claim is secured or unsecured. This is true for a variety of reasons. In Chapter 13, a secured creditor's claim can be modified. 11 U.S.C. § 1322(b)(2). A secured creditor has a right to accept or reject the plan. 11 U.S.C. § 1325(a)(5)(A). It has the right to receive the value of its allowed claim during the pendency of the plan. § 1325(a)(5)((B)(ii). It has a right to adequate protection during the pendency of the plan. § 1325(a)(5)(iii)(II). The debtor has a right to surrender the collateral to the secured

creditor. § 1325(a)(5)(c).

On the other hand, should a claim be unsecured -- that creditor's rights are restricted. The basic right of an unsecured creditor in Chapter 13 is to receive not less than the amount it would get should the debtor be liquidated in Chapter 7. § 1325(a)(4).

The essence of the Plaintiffs' claim is that DFS has perpetrated a fraud on the Chapter 13 bankruptcy system of distribution that deserves retribution. If the allegation is correct, then the Plaintiffs are aggrieved, although this class action may not necessarily be the correct vehicle for redress.

A "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2550 (2011), quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Should I grant the request to certify a class, my disposition must include: (1) the parameters defining the class or classes and (2) a clear and complete list of the claims, issues and defenses, to be addressed. *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591 (3rd Cir. 2012).

Plaintiffs have defined their putative class as follows:

> a. All persons who have entered into financing transactions with any of the Defendants for the purchase of computers and/or computer equipment through Dell, who then filed for Chapter 13 Bankruptcy relief under Title 11 of the United States Code or filed for Bankruptcy relief under another Chapter and converted to Chapter 13 in the period from August 1, 2000 through the date of the filing of this complaint [March 23, 2005] in any United States Federal District and in whose cases:
>
> > i. DFS filed POCs as secured claims or

       WWR [Weltman, Weinberg & Reis
       Co. L.P.A.]filed POCs on behalf of
       DFS as secured claims; and,

    ii.  The Debtors have made any payment
       either directly to DFS and/or WWR
       or said payments were made by a
       Chapter 13 Trustee to DFS and/or
       WWR after the date each debtor's
       respective bankruptcy case was filed.

  b.  Specifically excluded from the class are all such
    persons who fall within the above definitions; and,

    i.  Who have filed an objection to the
      proofs of claim filed by DFS or
      WWR on behalf of DFS; and/or,

    ii.  Who have received a final decree in
      their respective Chapter 13
      Bankruptcy cases as of the date this
      class action was commenced [March
      23, 2005]; and/or,

    iii.  Whose cases have been closed as of
      the date this class action was
      commenced; and/or,

    iv.  The Defendants herein, any
      employees, officers or directors of
      the Defendants or any of their
      subsidiaries or affiliates, and any of
      the legal representatives, heirs,
      successors and assigns of any such
      employees, officers or directors.[1]

  Does there exist an identifiable class? The class must be currently and readily ascertainable. This is called the "ascertainability" factor and serves three objectives by (1) eliminating serious administrative burdens, (2) protecting absent class members by facilitating

---

[1] Reprinted from Plaintiffs' Motion for Class Certification (Doc. #25).

[K:\Cathy\Opinions-Orders filed 2013\5-05-ap-50085_Patrick_v_Dell.pdf]  4

Case 5:05-ap-50085-JJT  Doc 206  Filed 03/11/13  Entered 03/11/13 14:17:53  Desc
      Main Document  Page 4 of 18

notice, and (3) protecting defendants by making claimants clearly identifiable. *Marcus,* 687 F.3d at 592-593.

DFS argues that the description of the class is wordy and not readily ascertainable. Vagueness is to be avoided. *Ad-Hoc Committee to Save Homer G. Phillips Hosp. v. City of St. Louis*, 143 F.R.D. 216, 219 (E.D. Mo. 1992). Precision is critical. *In re Monumental Life Ins. Co.,* 365 F.3d 408, 413-414 (5th Cir. 2004). The Court finds the class sufficiently defined, especially in light of the fact that future refinements by the court are possible. Federal Rule of Civil Procedure 23(c)(1)(C).

Once a class is properly defined, all prerequisites of Rule 23 must be met. *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 309 (3rd Cir. 2008). The court must make factual findings supported by a preponderance of the evidence. All relevant evidence must be considered. *Id*. at 307. The trial court is under a strict mandate to subject that examination to a "rigorous" analysis. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364 (1982). This is so because the machinery set in play is far-reaching and of significant expense.

> [D]enying or granting class certification is often the defining moment in class actions (for it may sound the "death knell" of the litigation on the part of plaintiffs, or create unwarranted pressure to settle nonmeritorious claims on the part of defendants) . . . .

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 162 (3rd Cir. 2001).

As indicated, Rule 23 has two prime components. First, the four requirements of 23(a) must be met: numerosity, commonality, typicality, and adequacy, and second, as specified in Rule 23(b), a least one of three types of class must qualify for certification. *In re Hydrogen,* 552 F.3d at 309 n.5.

Rule 23(a) reads:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;
    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)

Numerosity requires that the class be so numerous that joinder is not practical. There are three objectives of this requirement, i.e., (1) judicial economy, (2) greater access to judicial relief, and (3) the prevention of putative class representatives from unnecessarily depriving other members of the class from their day in court. *Marcus*, 687 F.3d at 595. The Plaintiffs have suggested that the class, nationally, has at least 4,746 members. Transcript of 09/28/2011 at 40 (Doc. #192). This would easily qualify for numerosity purposes. *Beck v. Maximus, Inc.*, 457 F.3d 291, 294 (3rd Cir. 2006)(776 class members is sufficient), *Stewart v. Abraham,* 275 F.3d 220, 226-227 (3rd Cir. 2001)("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Citing 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3][a] (Matthew Bender 3d ed.1999)). In their post hearing brief, the Plaintiffs have identified 117 potential class members in the Middle District of Pennsylvania alone. Post-Hearing Brief in Support (Doc. #200, at 4).

The Plaintiffs arrive at these numbers using the following procedure. At the time of the review, 24 of the 94 bankruptcy districts maintained a "claims activity report[2]." Using those

---

[2] A type of search in the Bankruptcy Court's Case Management, Electronic Case Filing System (CM/ECF).

reports, claims filed during a specified period of time by DFS or on its behalf were evaluated. Transcript of 09/28/2011 at 20 (Doc. #192). Claims filed as unsecured and claims filed in Chapter 7 were removed. Much of the Plaintiffs' argument as to the invalidity of the claims' secured status cites to Federal Rule of Bankruptcy Procedure 3001(d). Transcript of 09/28/2011 at 24 (Doc. #192). That paragraph requires that secured claims be accompanied by proof of perfection. The thrust of the Plaintiffs' position is that the alleged secured claims filed by DFS did not attach supporting documents that would establish its secured interest. Not all secured claims are perfected though, so it is doubtful that paragraph can support the invalidity of an alleged secured claim. *In re Stoecker,* 143 B.R. 879, 883 (N.D. Ill.1992)("There is no authority for the proposition that the failure to attach documents to a proof of claim requires the bankruptcy court to disallow the claim on that basis.") The ramifications of its absence is that those claims cannot enjoy the benefit of prima facie proof of validity. Federal Rule of Bankruptcy Procedure 3001(f). That does not mean those claims cannot be established as secured.

In my opinion, superior to the former argument is Plaintiffs' analysis that all of the secured proofs of claim filed by DFS can be pigeon-holed into a limited number of form documents designated by a form number located on the document. Plaintiffs' argument continues that the forms utilized would not normally support a secured interest, especially in the absence of the Debtors' signature.

I'm satisfied that the number of class plaintiffs easily meets the numerosity requirement.

As indicated in the Rule, commonality requires there be common questions of law or fact. Even a "single" question of law or fact common to the class will suffice. *Wal-Mart Stores,*

131 S.Ct. at 2556, quoting Nagareda, The Preexistence Principle and the Structure of the Class Action, 103 Colum. L.Rev. 149, 176, n.110 (2003). In accord, *Marcus,* 687 F.3d at 597. Nevertheless, simply articulating common questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores,* 131 S.Ct. at 2551 quoting *Falcon*, 457 U.S. at 157, 102 S.Ct. 2364. See also *Hassine v. Jeffries*, 846 F.2d 169, 177 (3rd Cir. 1988)("the harm complained of [must] be common to the class . . . .").

Plaintiffs allege DFS followed a pattern of filing secured proofs of claim for what was, in fact, unsecured claims. One common issue of fact appears to be whether DFS erroneously filed their unsecured debt as secured claimants in the bankruptcy cases of the class plaintiffs. Further supporting the issue of commonality is the fact Plaintiffs have established the use of a limited number of standardized loan documents used by DFS. It is suggested these alleged false proofs of claim filed by DFS, based on a limited number of standardized loan forms, comprised a course of conduct supporting the issue of commonality. Should this course of conduct be established, the conclusion that the Plaintiffs arrive at is DFS financially benefitted from such deception. If accurate, the Court will accept the presumption that DFS benefitted since it is a general rule liens pass through the bankruptcy estate unaffected[3], while unsecured creditors often receive a nominal amount, if anything. The leap the Plaintiffs would like me to make is the Plaintiffs were injured by this alleged deception. Such conclusion is not at all certain. While the Debtors may have "standing" to challenge a proof of claim as the proponent of the plan and the source of funding (see, for example, *In re RFE Industries, Inc.,* 283 F.3d 159, 164 (3rd Cir. 2002)), this is

---

[3] *In re Brawders,* 503 F.3d 856, 867 (9th Cir. 2007).

not the same as being *injured* by an incorrect proof of claim.

A debtor has a number of options when dealing with a secured creditor after filing a Chapter 13 plan. Should the secured claim be provided for in the plan, the debtor can make a provision for the creditor that the creditor "accepts" (11 U.S.C. § 1325(a)(5)(A)); the debtor could simply pay the underlying debt or at least the amount of the secured portion of the claim (§ 1325(a)(5)(B)); or simply surrender the collateral to the creditor (§1325(a)(5)(c)). There is also some authority for the debtor ignoring the secured creditor in the plan and allowing it to "ride through" the bankruptcy unaffected. *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 104 S.Ct. 1188 n.12 (1984).

The impact of a creditor filing a false secured claim affects different entities in different ways, but not necessarily to the detriment of the debtor. For example, the debtor is generally obligated to commit his/her "disposable income" to the plan under the law that was then in effect during the time period defined by the class definition.[4] 11 U.S.C. § 1325(b)(1)(B). To the extent a debtor paid a secured claim, disposable income would be reduced and less need be paid the trustee for the benefit of unsecured creditors. In this situation, it would be the unsecured creditors injured by a false secured claim. The debtor would simply redirect these funds that would have been paid a secured creditor to the plan for the benefit of unsecured creditors.

In a case where the debtor surrenders the collateral to the creditor, it is still uncertain as to what entity is injured by a false secured claim. If the collateral was otherwise nonexempt, its retention by the debtor would require a larger payment to unsecured creditors under the terms of

---

[4] The putative class would predate the effective date of the 2005 Bankruptcy Reform Act, October 17, 2005.

§ 1325(a)(4), which provides that unsecured creditors must receive what they would receive in a Chapter 7 liquidation. If the debtor was able to retain the collateral free of the lien, a corresponding increase in monthly trustee payments would be necessary to balance the value of that retained asset. If the debtor was able to exempt the collateral wrongly claimed secured by a creditor, then the debtor may be injured by his/her inability to retain the asset. It very well may be that the injured plaintiffs in the putative class are those debtors who have exempted or could have exempted the claimed collateral, since they alone would have suffered an economic impact.

Based on the record created at the certification hearing, I am unaware of whether sums directed to DFS and paid by the Plaintiffs could have been retained by the Plaintiffs or whether additional disposable income would flow to the Chapter 13 trustee for the benefit of those entities provided for in the plan.

While a debtor may have been deceived by the alleged wrongful filing of the claim, he/she may have suffered no economic injury. I conclude that it is as likely that the injury may have been inflicted on the unsecured creditors of the debtor who are not parties here. Neither is the Chapter 13 trustee before me as a representative of the unsecured creditors.

I find that a common injury has not been established and, therefore, commonality does not exist.

Typicality and commonality are closely related. The significance of typicality is that it screens out class actions where the legal or factual position of the representative is markedly different than other class members even though there are common issues. The class representatives, or at least one of them, must be a member of that class, and possess an interest or suffer an injury as a representative of the class. 5 *Moore's Federal Practice*, § 23.21[1]

(Matthew Bender 3d ed.). A comparative analysis should occur between the plaintiff and the class as a whole addressing three concerns: (1) the plaintiff and the class must generally be the same in terms of both (a) the legal theory of recovery and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense inapplicable to the class and which may become a major focus; and (3) the interests of the representative plaintiff must be sufficiently aligned with those of the class. *Marcus,* 687 F.3d at 598, quoting *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 597 (3rd Cir 2009).

In a similar vein, typicality and adequacy also invite a common analysis. Both cover a sufficiency of class representation. *Hassine,* 846 F.2d at 176 ("'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff.") With that general introduction, the putative class plaintiffs must be evaluated.

The captioned Plaintiffs are Eileen Patrick, Kurt Underkolfer, and Susan A. Helsel. According to the Complaint in this case, each of these Plaintiffs purchased a computer and software from Dell and executed what purported to be a security agreement in favor of Dell's financing agent, DFS. Eileen Patrick has since passed away and her interest is now represented by her spouse, Robert Patrick. Order of Court dated July 6, 2011 (Doc. #159). Susan Helsel is no longer participating in the action. See Plaintiffs' Supplemental/Amended Motion for Class Certification (Doc. #132, at ¶1 n.1).

Eileen Patrick, the original Plaintiff, alleges that she paid DFS the sum of $1,097.14 outside the Chapter 13 plan. In the Underkofler matter, DFS was paid $3,306.63 through the Chapter 13 plan.

Apart from the finding that all putative class members may not have been affected in the

same way, the interests of Patrick and Underkolfer appear to be consistent with the interests of the defined class. All have an interest in this Court adjudicating Count I, the sufficiency of DFS's proof of claim. Likewise, all would appear to have an interest in Count II asking for a determination of the secured status of DFS's alleged secured claim. All may have an interest in seeking injunctive relief against DFS should their Complaint be well-grounded. The Plaintiffs appear to have the same legal and factual position as the putative class, except that it would seem that each plan would have to be analyzed to determine what entity suffered financial injury by the alleged deception.

      I must determine whether there exists conflicts that the Plaintiffs would have with other putative class members. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231 (1997). It is important to examine evidence of any unique defenses that would render a Plaintiff an inadequate representative. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2nd Cir. 1990). The only potential conflict I have found lies in the question whether Robert Patrick, a representative of Eileen Patrick's decedent's estate, can adequately serve as class representative when faced with what might be a fiduciary conflict. *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir. 1988). But see, *Kaplan v. Pomerantz*, 131 F.R.D. 118 (N.D. Ill. 1990).

      But for the uncertainty and nonuniformity of injury, there appears to be sufficient typicality to meet the certification requirement.

      Adequacy of representation has been questioned in light of the long delay in initiating this certification hearing. Specifically, it has been argued that such delay could reflect poorly on the willingness of Plaintiffs to pursue the litigation on behalf of the class. *Andrews v. Bechtel*

*Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). For example, the District Court issued its Order affirming the dismissal of certain Counts but affirming the national jurisdiction of the Bankruptcy Court on March 19, 2008. Plaintiffs filed and received four extensions to complete discovery. Finally, the hearing on class certification took place on September 28, 2011.

Plaintiffs' counsel have demonstrated no experience in class litigation other than the present case. Nevertheless, two of the three lawyers advancing the Plaintiffs' case are well known and regarded in the District for their bankruptcy expertise, and the third lawyer has an established reputation as litigation counsel. They have demonstrated a dogged determination in preparing the framework for this litigation. I'm satisfied that, as a group, they can adequately represent a class plaintiff.

As discussed earlier in this Opinion, if all four requirements of Rule 23(a) were met, then at least one of the conditions for class actions found in Rule 23(b) must be satisfied. Notwithstanding the conclusion that commonality has not been established due to Plaintiffs' failure to identify any specific harm that an inappropriate filing by DFS would have caused them, I shall nonetheless discuss the Rule 23(b) requirements.

Plaintiffs argue in their supporting brief that each of the conditions found in Rule 23(b) could support this action. Memorandum of Law (Doc. #133, at 10).

Rule 23(b)(1) reads:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
    (1) prosecuting separate actions by or against individual class
    members would create a risk of:
        (A) inconsistent or varying adjudications with
        respect to individual class members that would
        establish incompatible standards of conduct for the
        party opposing the class; or

> (B) adjudications with respect to individual class
> members that, as a practical matter, would be
> dispositive of the interests of the other members not
> parties to the individual adjudications or would
> substantially impair or impede their ability to
> protect their interests;

Fed.R.Civ.P. 23(b)(1)

> Rule 23(b)(1) applies where separate actions by or against individual class members would create a risk of "establish[ing] incompatible standards of conduct for the party opposing the class," Rule 23(b)(1)(A), such as "where the party is obliged by law to treat the members of the class alike," *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), or where individual adjudications "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests," Rule 23(b)(1)(B), such as in " 'limited fund' cases, . . . in which numerous persons make claims against a fund insufficient to satisfy all claims," *Amchem*, *supra,* at 614, 117 S.Ct. 2231.

*Wal-Mart Stores,* 131 S.Ct. at 2558 n.11.

Despite Plaintiffs' argument, I find that a Rule 23(b)(1) claim is inapplicable. The thrust of the action is to invalidate the secured claim of DFS. I cannot fathom that the success or failure of individual actions would have a significant impact on the standard of conduct of DFS except to more carefully prepare future proofs of claim. Moreover, I see no impairment on the interest of others should individual actions be litigated.

Turning our attention to Rule 23(b)(2), it reads, as follows:

> (2) the party opposing the class has acted or refused to act on grounds that apply
> generally to the class, so that final injunctive relief or corresponding declaratory
> relief is appropriate respecting the class as a whole

Fed.R.Civ.P. 23(b)(2)

The Plaintiffs have sought injunctive relief in the Complaint in Count V. That Count has survived the Motion to Dismiss filed by the Defendants. For the purposes of the certification hearing, there was a vague reference for the need to issue injunctive relief to prevent DFS from

repeating the filing of these alleged inappropriate proofs of claim.

Perhaps it would take an injunction to prevent a creditor from filing false claims. Nevertheless, I do not believe that observation fairly states the Rule 23 requirement. As implied in *Wal-Mart*, the injunctive relief sought under (b)(2) is for the benefit of the members of the class. *Wal-Mart Stores,* 131 S.Ct. at 2559, 2560. At this stage of the proceeding, it is unlikely to offer benefit to the current Plaintiffs or any members of the putative class. This is so for the following reasons. The class definition requires that class members have filed Chapter 13 no later than March 23, 2005, the date this Complaint was filed. When considered in conjunction with the requirement that a plan can last no longer than 5 years (§ 1325(d)), it seems apparent that, in 2013, injunctive relief against DFS filing inappropriate claims would be unnecessary since the plans would have been completed. Those putative class members who have completed their plan payments would appear to have no need for prospective relief. *Id.* at 2560.

What the Plaintiffs argue in their brief is that DFS should be enjoined nationally from filing fraudulent claims, and this would benefit Chapter 13 debtors generally, not limited by the class definition. Memorandum of Law (Doc. #133, at 16). While this may be seen as a noble request, I hesitate to conclude a class action is the proper forum for such relief.

I will not leave this area without reflecting on the possibility that class plaintiffs could seek a mandatory injunction requiring DFS to disgorge funds received based on the alleged false claims. This is a possible option but increases the odds that individual review of cases would be required to identify the recipient of the disgorgement and the redistribution of that fund to the actual beneficiaries of the fund. However, monetary relief MUST BE incidental to injunctive relief in order to be recoverable. *Wal-Mart Stores,* 131 S.Ct. at 2557. It would strike me, in this

case, that the injunction would be incidental to the disgorgement. As such, certification under Rule 23(b)(2) is also inappropriate.

It seems apparent that the Plaintiffs advance, most strenuously, their ability to proceed under Rule 23(b)(3). That section reads, as follows:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)

The twin requirements of certification under 23(b)(3) are predominance[5] and superiority. *Sullivan*, 667 F.3d at 310. Though the predominance factor is much more demanding than commonality, predominance and commonality can be examined together. *Id.* at 297. There are differences. Commonality does not require that all class members share identical claims. *In re Warfarin Sodium Antitrust Litigation,* 391 F.3d 516, 529 (3rd Cir. 2004). Predominance does not require that all issues be common to the class. *Sullivan*, 667 F.3d at 301. Predominance does appear to require that the elements of the claim be capable of proof that is common to the class. *Marcus,* 687 F.3d at 603 citing *Hydrogen Peroxide*, 552 F.3d at 311. It also requires that questions common to the class "predominate over" other questions as pointed out in *Amchem,* 521 U.S. at 609.

---

[5] Predominance test is readily met in consumer fraud and antitrust cases. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 300 (3rd Cir. 2011) and quoting *Amchem*, 521 U.S. at 624, 117 S.Ct. 2231. No count alleging fraud is present in the case before me.

Pivotal to the decision to deny certification in *Amchem* was the fact that some class members suffered no injury. *Id*. This is a finding most *apropos* in the case before me. In the absence of the existence of a private cause of action for fraud, the filing of an unsecured claim as secured does not necessarily cause injury to the plaintiff or a member of the putative class. This is NOT a "fraud on the market" case where the conduct itself causes injury. *Newton,* 259 F.3d 154. Each class plaintiff's situation would have to be evaluated to determine the impact of an inappropriately filed claim. Such a conclusion militates against class certification. It negates a finding of commonality as well as predominance. I find that even if Plaintiffs and their putative class would prevail on the merits, each class member's bankruptcy case would have to be evaluated to determine the impact on the debtors' estate of the disallowed claim. This would not be an appropriate function of the class action court, especially in light of the fact that each of the putative class members has ready access to the bankruptcy court overseeing the administration of their case.

The class action must be superior to other alternatives. This is the "superiority" factor. There must be an administratively feasible method of identifying class members at some time in the future. Inasmuch as class members may possibly be determined by official bankruptcy records, feasability may be established. On the other hand, militating against superiority is the fact that litigation in one certifying court would appear to be an inappropriate vehicle to adjudicate these issues in light of the existence of bankruptcy courts heretofore assigned to administer the individual cases of the putative plaintiffs.

I conclude that the request to certify a class must be denied. Elements of commonality, predominance, and superiority are lacking for reasons articulated.

My Order will follow.

By the Court,

Date: March 11, 2013

John J. Thomas, Bankruptcy Judge
(CMS)